[L. A. No. 6358.   Department Two.—March 4, 1921.]

## GLOBE MANUFACTURING COMPANY (a Corporation), Appellant, v. LEO M. HARVEY, etc., Respondent.

[1] CONTRACT — PERFORMANCE—FINDING—CONFLICT OF EVIDENCE—AP-PEAL.—In an action for damages for breach of a contract to manufacture and deliver goods, a finding on conflicting evidence that the defendant had not failed, neglected, or refused to proceed with the work of manufacture, but that defendant had at all times diligently proceeded with the work, must be upheld on appeal.

[2] ID.—SECOND CONTRACT — EVIDENCE—ARRANGEMENTS UNDER FIRST CONTRACT—PAROL EVIDENCE.—Where a contract to manufacture and deliver automobile self-starters was followed by a second contract making changes in the construction which made their manufacture more expensive, and the latter contract did not purport to set forth that part of the agreement which adjusted the rights of the parties in regard to the steps which had been previously taken under the first contract, evidence of such arrangements was admissible in an action for damages for breach of the contract, provided they were not inconsistent with the terms of the second contract.

[3] ID.—EXPENDITURES—EVIDENCE—CORRECTNESS OF SUMMARY FROM ORIGINAL BILLS—COMPETENCY OF DEFENDANT.—In an action for breach of a contract to manufacture and deliver goods, the admission in evidence under the issue of damages of an itemized summary of the expenditures of the defendant without testimony of the defendant's bookkeeper as to their correctness was not error, where the defendant testified that he personally made up the statement from the original bills, of the payment of which he had personal knowledge.

[4] ID.—FURNISHING GOODS TO THIRD PERSONS—CONTRACTS OF BUYER —KNOWLEDGE OF SELLER—IMMATERIAL FACT.—In an action for damages for breach of a contract to manufacture and deliver goods, where it was adjudged that defendant was not in default in the performance of his part of the contract, it became immaterial whether the evidence supported the finding that defendant was without knowledge of plaintiff's contractual relations to furnish the goods to third persons.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Leslie R. Hewitt, Judge.   Affirmed.

The facts are stated in the opinion of the court.

James I. Shepherd and John E. Carson for Appellant.

William Hazlett for Respondent.

LENNON, J.—Plaintiff appeals from a judgment in favor of defendant in an action for damages for breach of contract. The undisputed facts, briefly summarized, are these: The plaintiff corporation and the defendant entered into an agreement, dated March 5, 1918, whereby defendant agreed to manufacture and deliver to plaintiff, at Los Angeles, one thousand self-starters for Ford automobiles, to be known as "Globe Starters," a device covered by patent of which plaintiff was the owner. Plaintiff agreed to pay defendant eight dollars apiece for said starters, paying one thousand dollars in advance and seven dollars each per starter as and when deliveries of any number of said starters were made. Plaintiff paid the one thousand dollars.

On April 16, 1918, after considerable negotiations between the parties, plaintiff and defendant entered into a second contract, which it was agreed was to take the place of the prior agreement. By the terms of the second contract plaintiff was to pay ten dollars each for one thousand starters in the following manner: The one thousand dollars already paid under the first contract was to be considered as a first payment under the second contract, plaintiff was to make another thousand dollar payment on May 1, 1918, and was to pay eight dollars each for the starters as delivered. Six days after the execution of this second contract, namely, on April 22, 1918, the president and vice-president of the plaintiff corporation, who conducted all the arrangements on behalf of plaintiff, called at defendant's place of business and had a conversation with defendant in regard to the progress of the work contracted for. During that conversation defendant presented for payment by plaintiff a bill of approximately two hundred dollars. Whether or not defendant unjustifiably refused to perform his part of the contract of April 16, 1918, unless plaintiff paid the bill so presented was the primary point for determination by the trial court in the instant case.

Shortly after the conversation of April 22d, and without further communication with defendant, plaintiff, on April 29, 1918, instituted the present action for damages for alleged failure and refusal of defendant to proceed under the contract. Defendant denied the allegations that he had failed or refused to carry out the contract, and filed a cross-complaint, alleging a breach of contract on the part of plain-

tiff in failing to make the one thousand dollar payment called for by the contract on May 1, 1918, and claiming damages for such breach. Judgment was rendered in favor of defendant and cross-complainant in the sum of $1,698.93.

It appears that five starters, the only ones which have been manufactured or delivered by defendant, were received by plaintiff from defendant on April 13, 1918, three days prior to the consummation of the second contract. It also appears that, when the first contract was made, plaintiff transferred to defendant certain patterns for use in the manufacture of the starters, that some changes in these patterns were later found to be necessary and were authorized by a Mr. Poole, a mechanic in the employ of plaintiff, who was the inventor of the starter and was placed by plaintiff in defendant's shop for the purpose of supervising and making suggestions for the proper carrying out of the work and directing changes that he found necessary in the construction of the starters. The said changes in the patterns were ordered and paid for by defendant. The items of the bill presented by defendant, during the conversation of April 22d, for payment by plaintiff consisted of charges for the alterations to the patterns and fifty dollars for the five starters delivered on April 13th.

It was the testimony of the president of the plaintiff corporation, corroborated by that of the vice-president, who is the father-in-law of the president, that, upon their refusal to pay this bill when presented by defendant at his office on April 22d, defendant declined to continue with the work on the starters. On the other hand, defendant himself positively and repeatedly testified that, while he urged the payment of the bill on that occasion, he did not refuse to go ahead with the work under the contract if the bill was not paid, but, on the contrary, that he endeavored to point out to the two officers of the plaintiff corporation that the work was progressing with all possible rapidity. When asked by the court as to whether he said that he would not proceed with the work under the contract unless the bill was paid, defendant answered: ''No, sir. I wouldn't say it even if I wanted to say it.'' Plaintiff contends that this voluntary statement of defendant accompanying the denial was so evasive as to destroy the force of the denial. The statement may have been superfluous and not responsive to the question, but it can scarcely be designated as evasive. Moreover,

this denial is only one of several denials by the same witness to the same question, the rest of which are clearly unqualified. Defendant's testimony in this behalf was corroborated by that of his sister, who, during the whole of the conversation in question, was sitting at her desk, which was located a few feet away from where the parties sat during their conversation. This witness' desk was in a room adjoining the office in which the conversation was held and was beside an open window in a wooden partition which separated the two rooms. Defendant's testimony was further corroborated by the assistant manager of defendant's business, who was summoned by defendant and introduced to the president of the plaintiff corporation for the purpose of assuring him of the progress of the work. Plaintiff suggests that the corroborating testimony is without force, because it does not appear that either witness heard all of the conversation in question. Both witnesses repeated in detail what they heard said in regard to the payment of the bill. The conversation so reported by them corresponded exactly with that testified to by defendant and amounted to nothing more, on the part of defendant, than mere requests for payment and assurances that the work was progressing. Both witnesses testified that, after the conversation in regard to the bill had been closed, defendant took the plaintiff's representatives about the shop endeavoring to demonstrate that the work was progressing as rapidly as possible. The testimony of these two witnesses indicates that they heard all of the substantial and material part of the conversation and is sufficiently clear and definite to possess weight in corroborating the statements of defendant.

The testimony in behalf of defendant upon this phase of the case is amplified by inferences naturally and reasonably arising from the proven circumstances. There is little likelihood that, a few days before the second thousand dollar payment became due under the contract, defendant would have made a refusal of performance contingent upon the payment by plaintiff of a bill amounting to less than two hundred dollars. The possibility is rendered more negligible by the steps which had already been taken by defendant in carrying out the contract. Admittedly a large amount of castings for use in making the starters had been delivered to defendant, and defendant had placed an order for springs

to be used in said starters with an eastern firm.   There was
testimony to the effect that as many men as could be spared
were engaged in setting up machinery in defendant's shop
preparatory to working on the starters and that the neces-
sary plans, etc., had been prepared.   Defendant continued to
accept deliveries of castings and keep men at work upon
the starters after the conversation of April 22d and until it
became apparent, by the institution of the present suit two
days before the thousand dollar payment was due from
plaintiff, that plaintiff had no intention of performing the
contract.   The order for springs was not canceled until after
the present suit was commenced.   It would seem that all this
tends to show sufficient activity of the defendant to indicate
an effort on his part in good faith to perform the obligations
of the contract, particularly when it is remembered that the
contract had been in existence only six days when the de-
mand for such evidence was made by plaintiff.   Plaintiff
insists that, in passing upon the question of whether condi-
tions indicated that defendant was proceeding in good faith,
consideration should be given the fact that the preparation
relied upon by defendant did not cover a period of only six
days, but extended back over forty days to March 5th, the
date of the first contract.   It is admitted that little was
actually accomplished under the first contract.   The reason
for this, according to findings of the trial court based upon
competent testimony, is to be found in the fact that, after
the first contract was signed, plaintiff decided upon con-
siderable changes in the construction of the starters which
made the manufacture of them more expensive.   In addi-
tion, defendant discovered that it was impossible to obtain
the springs necessary for the starters at the price which the
president of plaintiff had represented they could be ob-
tained, and that they could not be obtained in Los Angeles
in the quantity required, as said president had represented,
but must be ordered from a distance.   For these reasons, it
was found impossible to manufacture the starters at the
price fixed in the contract of March 5th, and, after consider-
able negotiating, new terms were agreed upon, and, therefore,
most of the preparations above set forth were taken after
the new agreement was reached, on April 16th.   Further-
more, both contracts were made at a time when defendant
was engaged on work required by the government for war

purposes, to which other work was necessarily subordinate, and, because of this situation defendant refused to consent to specify the times of delivery in the contract with plaintiff. These facts, we think, are sufficient to show that there was no unreasonable delay on the part of defendant in proceeding under the contract.

[1] From what has been said it is apparent that this appeal, for the most part, presents the oft-recurring and fruitless question of the correctness of a decision of a trial court based on a consideration of conflicting, competent evidence. In view of the sufficiency of the evidence in support thereof, the trial court must be upheld in its finding that "it is not true that defendant failed, neglected, and refused, or failed or neglected or refused, for a period of forty-two days, or for any period, or at all, to proceed with the work of manufacturing said starters, but, on the contrary, it is true that at all times after the 5th of March, 1918, defendant diligently proceeded with said work."

[2] Plaintiff complains of alleged errors in regard to the admission of evidence bearing upon the question of damages. The first alleged error is the admission in evidence of the bill for alterations to the patterns and for the five starters delivered on April 13th, and including the amount thereof in the damages awarded defendant. It is claimed that plaintiff did not agree to pay for the changes to the patterns and did not owe more than thirty-five dollars for the five starters, for the reason that they were delivered under the terms of the first contract. Inasmuch as the written contract of April 16th was in the form of a quotation of defendant accepted by plaintiff, it does not purport to set forth that part of the agreement which adjusted the rights of the parties in regard to the steps which had previously been taken under the contract of March 5th. Therefore, evidence of these arrangements was admissible, provided they were not inconsistent with the terms of the written agreement of April 16th. (*Guidery* v. *Green,* 95 Cal. 630, [30 Pac. 786]; *Sivers* v. *Sivers,* 97 Cal. 518, [32 Pac. 571]; *Germain Fruit Co.* v. *J. K. Armsby Co.,* 153 Cal. 585, 594, [96 Pac. 319].) In view of the total absence of any agreement making a special exception of the five starters delivered, and in view of the fact that the whole of the one thousand dollars paid under the contract of March 5th was to

operate as consideration under the new contract and that the prior contract was superseded for all other purposes by the contract of April 16th, we think the trial court was amply justified in concluding that it was the intention of the parties that all of the starters should be paid for under the terms of the second contract. Likewise the conditions under which the patterns were altered, namely, the authorization for the changes by the man employed by plaintiff to supervise and direct the work of construction and the knowledge of the president of the plaintiff corporation that the changes were being made, were sufficient to warrant the finding that plaintiff assumed the payment of the cost thereof. No question was raised as to the reasonableness of these charges.

[3] An itemized summary of the expenditures of defendant under the contract was admitted in evidence under the issue of damages. Plaintiff assigns this as error, for the reason that the person who kept defendant's books did not testify to their correctness. The statement, or summary, was admitted under subdivision 5 of section 1855 of the Code of Civil Procedure, because the original consisted of "numerous accounts or other documents, which cannot be examined in court without great loss of time." Defendant maintains a card system of bookkeeping and testified that he personally made up the statement in question by going over the cards and checking up the entries thereon with the original bills which he retained and which he knew had been paid. Therefore, the statement was, in fact, made from the original bills, of the payment of which defendant had personal knowledge, and defendant was competent to testify to the correctness of the items thereof upon his own knowledge, which he did. For this reason, testimony by the bookkeeper as to the correctness of the books of defendant was unnecessary and the statement was properly received in evidence.

It is contended that there is no evidence to support the finding that "immediately after making said agreement [referring to the agreement of March 5th] defendant ordered certain castings to be used in said starters." This finding is immaterial and unnecessary to support the judgment for, even if there is no evidence of this particular fact, there is ample evidence, as previously stated, to support the general finding that defendant proceeded diligently with the work at all times after March 5th. Plaintiff complains of

the finding that the order of April 16th was "supplementary" to the order of March 5th, claiming that it was an entirely new agreement and the order of March 5th was canceled. The rest of the finding in which this word appears discloses that there can be no implication from the use of the word "supplementary" that the court found that the order of March 5th was continued in force and added to by the order of April 16th, for the finding is that the "supplementary" order of April 16th was made "in place of and in substitution for said order of March 5, 1918."

[4] It is claimed that there is no evidence to support the finding that defendant had no knowledge of plaintiff's contractual obligations to furnish to third persons the starters ordered by it from defendant. We need not determine this question for, in view of the fact that defendant was adjudged not in default in the performance of his part of the contract, this fact became immaterial.

It is true, as pointed out by defendant, that plaintiff might have been more impartial in setting forth extracts from the evidence in the supplement to his brief. However, we do not deem the omissions so flagrant as to call for an order requiring plaintiff to reimburse defendant for costs and attorney's fees incurred in printing a supplement to defendant's brief containing testimony in defendant's favor.

The judgment is affirmed.

Sloane, J., and Wilbur, J., concurred.