[Civ. No. S. C. 24. Second Appellate District, Division One.—April 2, 1937.]

SAMUEL H. STEINBERG, as Trustee, etc., Appellant, v. H. M. EVANS et al., Respondents.

Philip N. Krasne, Leon Kaplan, Frederick Lamken and Benjamin J. Goodman for Appellant.

W. I. Gilbert for Respondents.

DESMOND, J., *pro tem.*—The plaintiff brought suit for an injunction to prohibit the sale of real estate under trust deed foreclosure proceedings; also for declaratory relief and an accounting. The trial court refused to grant the injunction, and by its findings determined that the defendants had "rendered to the plaintiff an accounting for all rents received and the application thereof", etc. From the judgment, holding that the defendants were entitled to proceed with the sale of the premises in question, this appeal is taken, the appellant maintaining that the court committed error in refusing an accounting to the appellant; that the accounting which was submitted by the respondents is legally insufficient; that the evidence fails to support the finding of fact and the judgment based thereon that a default existed under the terms and conditions of the note and deed of trust. It is also contended that the court erred in failing to find that the appellant was entitled to all uncollected rents which became due prior to the actual foreclosure sale. ██ The attempted appeal from the order of the trial court denying plaintiff's motion for a new trial must be dismissed, since, under the circumstances of this case, it is not authorized. (*Gray* v. *Cotton*, 174 Cal. 256 [162 Pac. 1019].)

Although the Title Insurance and Trust Company, which was named as trustee in the deed of trust for the benefit of H. M. Evans and Mary E. Evans, appears in the case as a defendant and respondent, where the words "defendants" or

"respondents" appear in this decision they will be understood, as a matter of convenience, to refer to Mr. and Mrs. Evans, and not to the Title Insurance and Trust Company.

Addressing our attention to the appeal from the judgment, we find the following situation: Anna L. Stine, owner of the real estate involved in this suit, was adjudicated a bankrupt in involuntary proceedings on July 17, 1931. She had constructed upon her property a building, designed for the undertaking business, and had leased the premises to Edwards Brothers, Inc., on October 15, 1929, for a term of 25 years, on an ascending scale of rentals. On April 9, 1930, Mrs. Stine borrowed $60,000 from the respondents, and as security for payment of the promissory note given at that time she executed a deed of trust, attaching to the premises in question, naming Title Insurance and Trust Company as trustee thereunder. On June 16th, as additional security for this loan, Mrs. Stine assigned to respondents the lease which she had executed to Edwards Brothers, Inc. This assignment provided that upon the assignor's failure to perform under the terms of the note and trust deed, the assignees should have the right, while default continued, to enforce performance of the terms of the lease, "including the collection of rents". The assignment closed with the following clause: "Second: It is understood and agreed that the parties hereto intend to and hereby do bind themselves, their heirs, executors, administrators and assigns, to all of the terms, covenants, conditions and agreements of this assignment of lease."

On August 4, 1930, Edwards Brothers, Inc., assigned its interest in the lease to Edwards Brothers, Ltd. The involuntary petition in bankruptcy was filed against Mrs. Stine on May 18, 1931, but a little less than four months previously, on January 23, 1931, the Title Insurance and Trust Company had filed for record a notice of breach of the obligations of the note and deed of trust. After a trustee in bankruptcy had been appointed, an agreement called a "stipulation" was entered into by him and respondents on November 19, 1931, under the terms of which respondents delivered to the trustee for record a rescission of their election (which had been recorded on January 23, 1931) declaring due the entire amount represented by the trust deed. It was also provided that the "$60,000.00 note and trust deed be and the same are reinstated in full force and effect according to their respective

terms and provisions, the same as though no Declaration or Election to Declare the whole of said note due and payable had been made or recorded''. The stipulation provided further that the lessee, Edwards Brothers, Ltd., should pay to the trustee in bankruptcy the rents accrued and payable October 15, 1931, and all future accruing rents, and that the trustee, upon the receipt thereof, should forthwith pay said rents to the respondents. From the rents received, all accrued and accruing interest on the $60,000 note, according to its terms and provisions, was also to be paid under the terms of the stipulation, and it was provided that the payments on principal specified in the note, namely, $2,000 every six months, beginning April 9, 1934, should be paid to the date of maturity of the note, April 9, 1940, at which time the unpaid balance would become due and payable, according to the terms of the note and the trust deed securing the same.

Paragraph VII of the stipulation provided: ''In the event said Los Angeles property is sold by the trustee in bankruptcy of said Stine or by the exercise of the option to purchase executed by Stine to said Edwards, or otherwise, said Evans shall be paid out of the proceeds of sale, an amount sufficient to discharge all said items and amounts then unpaid hereinbefore specified to be paid said Evans—with interest thereon as hereinbefore provided—including all amounts of principal and interest on said notes then due and payable; the principal and interest of said $60,000.00 note not then due and payable shall become due and payable according (to) the terms, conditions and provisions of said note and trust deed securing same.''

Paragraph VIII provided: ''If said Evans does not receive payment of the rents as and when specified in said lease, said Evans may enforce payment thereof, and of all the items and amounts—to be paid to said Evans—with interest thereon—as hereinbefore specified, according to the terms, conditions and provisions of said lease and the assignment thereof and said notes and trust deed respectively.''

Paragraph IX reads as follows: ''That said $60,000.00 note and the said trust deed securing same, shall, except as by this stipulation modified, in all respects be and remain in full force and effect according to their respective terms, covenants and provisions.''

Paragraph XI provided: "So long as said rents are paid to said Evans as herein and in said lease provided, said Evans will not declare any default under said notes or trust deeds or either of them."

By paragraph XII it was agreed: "This stipulation is executed to avoid and adjust litigation on the matters herein involved, and *if for any reason the same is not carried out and executed according to its terms and intention, the respective parties hereto are remitted to all their rights, the same as if this stipulation had not been made.*" (Emphasis ours.)

Acting under this stipulation, the trustee in bankruptcy collected from the lessee of the premises certain rents, some of them reduced in amount by agreement with the respondents, to whom they were paid, until finally, on May 25, 1934, the respondents declared all sums secured by the deed of trust due and payable, because of the breach of the obligations imposed by the note and deed of trust securing the same, specifying particularly that "interest is in default in an amount of $9,979.81 . . . also that principal payment in the amount of $2,000.00 was due April 9th, 1934, and remains unpaid." While this declaration was signed and acknowledged by the respondents on May 25th, it was not recorded by the trustee, Title Insurance and Trust Company, until June 8, 1934. On that date, the trustee in bankruptcy sold to "S. H. Steinberg, Trustee", the real estate here involved, "subject to all encumbrances, liens, assessments and taxes of record, mechanic's liens, judgments, *assignment of rents, lease and agreement with Edwards Brothers, Ltd.*" (Italics ours.) This deed, executed on June 8, 1934, was recorded on June 20, 1934, and passed title to several items of property in addition to the Los Augeles real estate, including "all of the right, title and interest of the bankrupt estate in and to any remaining property, rights in action, choses in action, and equities held by the trustee herein", etc. The consideration for the deed, according to its recital, was $350.

Upon receiving legal title to the Los Angeles property as trustee for Anna L. Stine, this appellant, as such trustee, filed a suit to enjoin the proposed foreclosure pursuant to the notice of breach and election to sell which had been recorded on the 8th of June, 1934. This suit was successful, and judgment was entered in favor of the plaintiff on September 20,

1934. In this connection, we may note that following the filing, on June 8th, of the notice of breach and election to sell, the respondents received two payments of rent under the Edwards Brothers lease, namely, $750 on June 11, 1934, and $750 on June 18, 1934. Prior to the time that judgment was entered enjoining the sale under that notice of breach, another notice of breach and election to sell under the deed of trust was recorded on September 1, 1934. This was followed by the filing, on November 7, 1934, of the present action, which was unsuccessful from the plaintiff's point of view in the lower court, and no bond being posted upon the appeal taken, the property was sold, after several continuances, on May 28, 1935. Respondents became the purchasers of the property in question, bidding therefor the sum of $60,000, minus the charges of sale.

While the notice of breach of September 1, 1934, is not before us, we observe that the trial court made a finding that ''the terms of said written agreement, more particularly the terms of paragraph VII thereof, were breached by the sale of the above-described premises to the plaintiff herein for a consideration of $350''. That amount was very obviously insufficient to meet the obligations due respondents on the date of sale; therefore, under another provision of the stipulation, the respondents were remitted, by the breach thus occurring, to their rights ''the same as if this stipulation had not been made''. One of these was the right to foreclose for delinquency in money payments under the terms of the note and trust deed. ■ The accounting had in this case satisfies us that such delinquency existed in a large amount. But appellant claims that no proper accounting was made to the court. The following colloquy appears in the transcript:

''Mr. Gilbert (counsel for respondent): Very well. What does your Honor want to do about the third cause of action? Do you want to take up the time in the accounting here, or do you want to refer it to a referee?

''The Court: If it is not too extended—

''Mr. Gilbert: It is not extended. I have it—I can put on the accounting now, if you want to do it; but if counsel wants us to go out and get all these vouchers and bring them in, that is another thing.

"Mr. Goodman (counsel for appellant) : No. Let counsel proceed with his accounting and let us see how we get along. We may not need those things. I think the court can determine for himself.

"Mr. Gilbert: All right."

The accounting was rendered by means of a statement summarizing receipts and expenditures, concerning which the witness Wheeler, son-in-law and agent of the respondents, was cross-examined at some length. It showed that there were due and unpaid, in addition to the sum of $60,000 the face of the note, delinquent interest payments, penalty interest, and accrued interest, in the sum of $13,155.49, plus advances for insurance premiums and first half of 1934–1935 taxes, $582.14. We have examined this statement, and note that the first payment of rents made under the stipulation with the trustee in bankruptcy is dated December 3, 1931. It was more than a year thereafter, to wit, on December 27, 1932, before the respondents were able to enter a credit for a payment of quarterly interest due on the trust deed note. Rentals received in the intervening period were all applied to the payment of items that by the terms of the stipulation were to have precedence, such as overdue taxes, attorney's fees, trustee's fees, payments on assessments, and payments for items of operating equipment on the premises. The entry of December 27, 1932, to which we have referred, shows a credit on the interest payment that was due October 9, 1930, more than two years previously. It appears from this entry that this was in fact the second quarterly payment that had fallen due under the terms of the note, for the first quarterly payment upon this note dated April 9, 1930, was payable on July 9, 1930. For a period of almost two years following this entry of December 27, 1932, the statement shows payments applied, as available from the rents, to liquidation of the overdue quarterly payments of interest, the entry under the last date of the account, June 18, 1934, showing a credit on the quarterly interest that fell due July 9, 1932. It will be seen, therefore, that payments of interest were almost two years in arrears at a time shortly before the notice of breach was recorded. This detailed statement was received in evidence over the objection of the appellant. No error arose here, in our opinion, under the principles referred to in

*San Pedro Lumber Co.* v. *Reynolds,* 121 Cal. 74 [53 Pac. 410], and *Globe Mfg. Co.* v. *Harvey,* 185 Cal. 255 [196 Pac. 261]. (See 10 Cal. Jur. 134, and notes.)

█ Referring to the claim that the court erred in failing to find that the appellant was entitled to the uncollected rents which became due on July 15 and August 15, 1934, prior to the recordation of the notice of breach and election to sell on September 1, 1934, we believe the decision of the court that respondents are entitled to those rents is sustained by the weight of authority. (Collier on Bankrupty, 3d ed., p. 1198; *Associated Co.* v. *Greenhut,* 66 Fed. (2d) 428.) It will be remembered in this connection that the conveyance to Steinberg as trustee for Mrs. Stine was made by the trustee in bankruptcy "subject to . . . assignment of rents, lease and agreement with Edwards Brothers, Ltd."

Judgment affirmed. Attempted appeal from the order denying motion for new trial dismissed.

Houser, P. J., and York, J., concurred.