BRADEN WINCH CO. v. SURFACE EQUIPMENT CO.

No. 31963. Dec. 22, 1945.

Rehearing Denied Feb. 5, 1946.

*165 P. 2d 640.*

Logan Stephenson, F. C. Swindell, and Q. M. Dickason, all of Tulsa, for plaintiff in error.

A. C. Saunders, of Tulsa, for defendant in error.

CORN, J. This is an appeal by the defendant from a judgment rendered upon the verdict by the common pleas court of Tulsa county, in favor of the plaintiff, Surface Equipment Company, and against the defendant, Braden Winch Company, in an action to recover the reasonable value of services rendered in processing and manufacturing certain equipment. The parties will be referred to herein as they appeared in the trial court.

The plaintiff alleged in its petition

that on the 19th day of March, 1943, the defendant placed an order with it to tool, work, and service 475 2H-100 pinion gear blanks. In pursuance of said order the plaintiff performed said services and made deliveries under dates of April 10, 17, and 23, 1943, and that the reasonable value of the work, labor, service and machine equipment, plus a reasonable profit, for performing the work, was the sum of $1.75 per unit, making a total of $1,000.75; that defendant had failed and refused to pay the same, and prayed judgment for said sum.

The defendant in its answer admitted placing the order and receiving deliveries of said number and quantity of units, but alleged that an oral agreement was had before placing the order that the charge for the services would be the customary price charged in that community by others for performing similar work; and that the customary price was 48 cents per unit, or a total sum of $275.80, which amount the defendant tendered in court. Verdict and judgment were rendered for the sum of $858.

It is the undisputed fact that no definite price per unit was attempted to be fixed by the parties before the work was done. Mr. Michaelson, superintendent for the defendant company, testified:

"Q. When you showed him the blueprints, why then did you not ask him what it was going to cost. A. Becasue it is impossible to get a shop pinned down on a rate, and some of the big shops can do the work for less than these small shops, and you cannot ever do that."

The testimony throughout the record clearly shows that there was no established uniform price per unit for such work under the conditions prevailing at that time, and that the cost of such production varied considerably with the type of equipment used in different shops or factories, and somewhat, perhaps, with the experience and skill of workmen obtainable at the time.

But there was a fixed and uniform wage scale, and the prevailing charge for labor and machinery for this particular kind of work was $3 per hour, and added thereto was a customary charge for overhead expenses, and one for profit. These charges were fixed, certain, and uniform, but the output or production under varying conditions was uncertain. Therefore, in placing or accepting orders the contracting parties did not attempt to fix a definite price per unit, for the work to be done.

The defendant first contends that the court erred in admitting in evidence a statement offered by the plaintiff showing the hours of labor and wages paid, and other items and charges showing the cost of the service rendered as computed and charged by the plaintiff. The statement was objected to on the ground that it shows on its face that it was not kept in the ordinary course of business, and that the items thereon were not entered at the time the work was performed, but that the statement was mere calculations. In answer to this objection the plaintiff asserts that it was admissible under the rule laid down in First National Bank of Enid v. Yeoman, 14 Okla. 626, 78 P. 388, since the action is not brought upon a book account, but for the reasonable value of the services rendered, and the witness, Mr. Eskridge, testified that he figured the cost and charges upon which the invoices were made, and that he was the timekeeper and paid the men, and was testifying from personal knowledge as well as from the memorandum which he made at the time the job was being done and before the invoices were mailed out to the defendant. In First National Bank of Enid v. Yeoman, supra, the conditions under which a memorandum may be admitted in evidence are set forth in paragraph 1 of the syllabus, as follows:

"Written memoranda of subjects and events pertinent to the issues in a cause, made contemporaneously with their taking place. when shown by the oath of the person making them that they

were known to be correct when made, may, when the memory of the witness is deficient, be referred to to refresh the memory of the witness; and when so used, if the witness is unable to state the facts so recorded, such memoranda may be introduced in evidence, not as independent proof, but to supply the details of what the witness has sworn to generally."

Under similar circumstances such memoranda were admitted in evidence in Foy v. Pacific Power & Light Co., 110 Wash. 248, 188 P. 514; German Insurance Co. v. Amsbaugh, 8 Kan. App. 197, 55 P. 481; Mensing v. Wright, 86 Kan. 98, 119 P. 374; Globe Manufacturing Co. v. Harvey, 185 Cal. 255, 196 P. 261.

Next, the defendant asserts the rule to be that where no price is agreed to be paid, the law implies the customary and usual price.

Title 15, sec. 112, O. S. 1941, provides:

"Amount of consideration where not specified. When a contract does not determine the amount of the consideration, nor the method by which it is to be ascertained, or when it leaves the amount thereof to the discretion of an interested party, the consideration must be as much money as the object of the contract is reasonably worth."

To show the worth or value of the services performed the plaintiff adduced evidence to show the cost thereof under the conditions known to both parties when the work was undertaken, while the defendant adduced evidence to show what it paid factory for the same kind of processing upon the unit basis. Witnesses from other shops and factories were brought in to give testimony concerning the cost per unit with different kinds of equipment, and it may be observed from their testimony that the cost varied somewhat according to conditions and to equipment used.

The solution of the controversy is rendered difficult by the wide difference in the contentions of the parties as to the value of the services performed, and by the unprecedented conditions under which the contract for the work was let and performed. Usage and custom grow out of settled and stable conditions and rules defining what is usual and customary under such conditions cannot be made to apply to conditions drastically different and uncertain.

The determination of the value of the services performed in this case was a question of fact for the jury, and it was proper for the jury to consider the question in view of the exigencies involved, and not to be guided entirely by what would be customary under ordinary conditions.

In the case of Jarecki Mfg. Co. v. Merriam, 104 Kan. 646, 180 P. 224, it is stated:

"To establish the fact of the existence of such a custom, all the requisites must be proved by evidence which is clear and convincing, evidence of such cogency as to satisfy the mind and generate full belief, and a mere preponderance of the evidence is not sufficient."

In 71 C. J. p. 163, par. 137, it is stated:

"No definite rule exists as to whether a recovery on a quantum meruit for services, work and labor, or incidental materials, is excessive, reasonable, or inadequate; but this is a matter to be determined from the facts and circumstances of each particular case, depending largely upon the character of the services or work and labor and the length of time taken to perform them."

The defendant challenges the correctness of the court's instructions, the court refusing to give its requested instructions to the effect that the plaintiff could only recover the reasonable value of the services performed, and that in determining the reasonable value is meant that value which is the usual and customary value in that community for such work. The court instructed the jury that if they found the defendant orally agreed to pay a reasonable price for the use of the type of equipment and the kind of labor had by the plaintiff for processing the 575 units,

their verdict should be for the plaintiff in such sum as would reasonably compensate the plaintiff for such work, not to exceed the sum sued for. And that arriving at what is the reasonable value of the work and services performed and furnished by the plaintiff they were entitled to consider the amount of wages paid the workmen of the plaintiff, the amount of time involved, the type and character of the machinery involved in performing the work and services, the customary and usual charge in that vicinity for the use of the equipment required to perform the service for the defendant, and all of the items of cost including the services properly allocated to the work and the fact that the plaintiff was entitled to a reasonable profit in addition thereto.

The instructions given cover the theory of the case of both parties. We have examined the record and find testimony in support of both theories, which required their submission to the jury, and the issues being fairly presented, we find no reversible error in the instructions.

The defendant also contends that the court should have directed a verdict for plaintiff only in the sum tendered by defendant.

In order to do that the evidence would have to show conclusively that the plaintiff agreed to do the work at 48c per unit, or that plaintiff agreed to take the order at the customary price and that 48c per unit was the undisputed customary price in that community for the services performed. From the evidence in the record it is doubtful if there was an established customary price for such services, as the testimony of Mr. Michaelson indicates, where he said: "It is impossible to get a shop pinned down on a rate, and some of the big shops can do the work for less than these small shops, and you cannot ever do that." The evidence indicates that the defendant was letting these contracts to every available shop that was at all equipped to do the work,

regardless of the kind or condition of its equipment, in order that it might fill large orders for the manufactured parts mentioned. This witness said that he was not permitted to state whether this was a war order, nor does he state what price his company received per unit for these parts. Such controverted questions of fact are for the jury and may not be withdrawn by the court.

Judgment affirmed.

GIBSON, C. J., HURST, V. C. J., and BAYLESS, DAVISON, and ARNOLD, JJ., concur.