MERCANTILE INSURANCE CO. et al. v. MURRAY.

No. 22377.   March 19, 1935.

Rehearing Denied April 23, 1935.

Rittenhouse, Webster & Rittenhouse, for plaintiffs in error.

Whiteside & Yates and Guy P. Horton, for defendant in error.

BUSBY, J. This is an appeal from a judgment of the district court of Jackson county in favor of the defendant in error, as plaintiff, and against the plaintiffs in error, as defendants. The parties will be referred to as they appeared in the trial court.

The plaintiff, M. T. Murray, suffered a fire loss to his shoe store, known as The Bootery, located in Altus, Okla. At the time of the fire the plaintiff carried insurance on the stock of goods in the sum of $15,000, $11,000 of which was carried by the defendants and $4,000 carried by the Aetna Insurance Company.

Soon after the fire, E. A. Thompson, a representative of the Fuller Adjustment Company, called upon the plaintiff, representing the various insurance companies, the defendants herein, and conferred with the plaintiff in an effort to effect a settlement. Shortly thereafter, other adjusters came for the same purpose. The plaintiff and the adjusters were unable to agree on the value of the salvaged stock of merchandise, and, after some negotiations, the plaintiff and defendants agreed to submit to arbitration the amount of the plaintiff's loss, and an agreement to that effect was entered into between the plaintiff and the defendants. The terms of the agreement were that plaintiff was to select one arbitrator and the defendants one arbitrator, and the two so selected were to select a third. Two appraisers were agreed upon and named in the written agreement. The plaintiff was awarded damages in the sum of $8,250. The plaintiff refused to abide by the decision of the arbitrators and brought suit against the defendants and the Aetna Insurance Company for their respective amounts of insurance held by each on the plaintiff's stock of merchandise.

The defendants filed their respective answers. A stipulation agreement was entered into consolidating the four causes of action against the defendants into one action for the purpose of trial and appeal, under No. 474. The suit against the Aetna Insurance Company was transferred to the federal court before the trial.

The defendants contended that the plaintiff, having agreed to appraisal and arbitration of the loss and damage and an appraisal having been made, the burden was on the plaintiff to prove the grounds for setting it aside. The plaintiff assumed that burden. The cause was tried to a jury and a verdict rendered in favor of the plaintiff. The jury found the total damages sustained were $14,300. Under the instructions of the court, the jury apportioned the damages among the several defendants and rendered a judgment against each defendant. Consideration was given to the amount of insurance carried with the Aetna Insurance Company, not a defendant herein.

It will be necessary to consider at some length the grounds alleged in the plaintiff's petition upon which he asked to have the award set aside.

In paragraphs 7 and 8 of the petition it was alleged that the purported award is invalid and not binding upon the plaintiff for the reasons:

"*  *  * That plaintiff was induced to enter into said arbitration agreement with the understanding that the arbitrators to be selected were to be fair, impartial, qualified and competent parties and that said arbitration board was to arrive at the actual cash value of the property at the time of the fire and the value immediately thereafter and arrive at the loss and damage occurring thereby and that he would be given an opportunity to present evidence of his losses before said board of arbitration had completed its work, but plaintiff alleges that the said I. R. Slesnick, so designated by the adjuster for the defendant insurance company, was not a competent and disinterested appraiser, as required by the terms of the policy, but that he was a partisan of the company, a special friend of the adjusters, and that he had been employed previously for such purpose and that he was biased and prejudiced against such plaintiff and in favor of said defendant, and that such facts were unknown to the plaintiff at the time of the selection of said appraiser and up to and including the time when said pretended award was made. Plaintiff further alleges that he was not given an opportunity to present his evidence of loss at any time before the appraisers completed their work, and that, although he demanded that he exhibit to said board his books, inventories, etc., showing the amount of stock that he had on hand at the time of said fire, that said board arbitrarily excused him from their presence and refused to hear and consider evidence of his loss as he desired to make proof of.

"Plaintiff alleges that he is informed and believes that when he was excluded from the room and building in which said board of arbitration was holding its hearing that the said I. R. Slesnick produced an alleged inventory which he claimed to the other members of said board to be an inventory of the stock of merchandise of the plaintiff at the time of said fire; that the said I. R. Slesnick represented to the members of said board that plaintiff could not be heard nor communicated with during its session; that the said Slesnick represented to the other members of said board that the defendant company and other insurance companies carrying insurance upon said stock had offered plaintiff the sum of $6.350 as damage, but that he would be willing to compromise by allowing plaintiff $8,250, and also represented that plaintiff only had $11,000 worth of insurance.

"(8) That the said Slesnick informed said other members that it was not necessary to arrive at the value of the salvaged stock; that he had had experience in matters of this kind before and that it was immaterial as to what said board might consider the value of such stock of merchandise before said fire and that he induced said other members of said board to sign said award, when in truth and in fact no actual loss was ever agreed upon by said board.

"That said representations of the said Slesnick were false and fraudulent in that the said Slesnick did not have an inventory of the said stock of merchandise immediately preceding the fire, and the said Slesnick knew that he did not have the same; that said representations to said board that this defendant and other companies had only offered the plaintiff $6,350 was false for the reason that said insurance companies, through the adjuster, had offered this plaintiff $9,000 in settlement of said loss and that said Slesnick knew of such fact, and, the said Slesnick also knew that plaintiff had $15,000 insurance. That the representations of the said Slesnick that this plaintiff was not entitled to introduce evidence as to his loss and damage, and that said board was not permitted to communicate with him was false and fraudulent and known to be so by the said Slesnick and all of such representations were made by the said Slesnick for the purpose of obtaining the signatures of such other members of said board, through such fraud and trickery and in order to defeat, cheat and defraud this plaintiff of his just claim."

The plaintiff testified that he demanded of the arbitrators that he be allowed to be present when the arbitrators were considering his fire loss and was told it would be all right. The witness testified as follows:

"Q. Did you go in with them? A. Yes, I went in the building when they first walked in and stayed a few minutes, and they commenced to discuss some matters there and they wanted to be left to themselves. Q. What did Slesnick tell you with reference to whether you could remain and show your books? A. He said, 'Yes, that will be all right. As quick as we get the other man.' And I told him we were going to be upstairs waiting for you and as quick as you get the other man I want you to notify us.' And he said, 'As quick as we get the other man, Mr. Murray, I will call you and you can take him to the bank and get him qualified; then you will know we are ready to do business and you can come in.' And I never was called. And he went and done the calling and got the fellow and got him qualified and got him in there and I never knew who the fellow was until after the award was made. Q. When was the next you heard from Slesnick and the board? A. The next I heard of him was after the award was made. This happened about 12 or 12:30 when these two went in there together. And the other man got there some three o'clock. These two had been together all this time. And I never saw anything of Slesnick until after the award was made sometime about 5 or 5:30."

The plaintiff further testified that when the appraisers came upstairs where witness had been waiting, he asked Slesnick what they had done and he refused to tell him. In answer to a question to tell what was said there, witness testified:

"A. I said, 'Well, tell me.' I said, 'If you are going to come down here and take a man's business over without giving him a hearing anything about it,' I said, 'Tell us what you have done.' And he still didn't answer me. So we started walking down the stairs and got down on the steps on the north side of the square, and he still stood there speechless, looked like. * * * A. And he finally said, 'That man over there can tell you.' Q. Whom did he point to? A. He pointed to this fellow from Hobart, the third man. I said, 'Well,' I said, 'Tell me what you have done. It don't seem to be a secret, does it, anything of that kind?' And he said, 'No.' And I said, 'What did you do?' And he up and told me what they had done, the Hobart man. Q. Did he give you a copy of the award? A. No. Q. What did he tell you he had done? A. The fellow from Hobart said they found that I was entitled to $8,200. I said, 'How can you arrive at an award like that,' I said, 'without any evidence of the amount of merchandise and stock in the building before it was burned up and things of that kind?' He said. 'Well, Mr. Slesnick had here Mr. Murray's inventory the first of the year.' And he said, 'I'll tell you, Mr. Murray, I got you $2,000 more money than the insurance companies have offered you before, the most you had been offered,' he said, 'was $6,200,' and he said, 'We got you $8,200.' And I said. 'Who told you that?' He said, 'Mr. Slesnick over there.' I said, 'Did you tell him that, Slesnick?' He stood there and kinda crumpled up, you know, and I couldn't get no answer out of him. * * *"

Witness Herndon, the umpire, or third of the arbitrators, testified, in part and in substance, that the board was largely controlled and influenced by Slesnick; that he has handled practically the whole proposition; that Slesnick told the witness and the other arbitrator that everybody must be excluded from the room during the arbitration; that McDonald, the arbitrator selected by the plaintiff, had requested that Mr. Anderson, an agent of or connected with the plaintiff, be admitted for the purpose of securing information from which to base the award and that Slesnick refused; that McDonald told Slesnick that they had told the plaintiff and Mr. Anderson that they would call them when they got ready for them; that the arbitrators and appraisers never had before them the inventory of January 1, 1930, nor any evidence showing the amount of purchases nor amount of sales, nor the amount of returned merchandise; that they had no information as to the amount of merchandise actually burned up.

The question of fraud, misconduct and false representations of the insurance companies through their selected agents, as well as the failure to consider evidence by the board, was all submitted to the jury under proper instructions. This court cannot say that there was no evidence to sustain their finding upon that issue, or that they were not justified in setting the arbitration finding aside. Aetna Ins. Co. v. Murray, 66.Fed. (2d) 289. When the testimony is considered as a whole, we think it sufficient to support the allegations of the petition setting up grounds for setting the award aside. The plaintiff did not bring this suit solely on the ground that the award was insufficient or inadequate, and neither was it tried solely on that issue or theory.

The insurance policy provided for the appointment of arbitrators and appraisers in the event of a disagreement as to the amount of loss. It further provides for the insured to produce for examination all books of accounts, bills, invoices, when requested. In the instant case the plaintiff was not requested to present same, but he requested that he be allowed to present same for the information of the arbitrators and appraisers and his request was refused.

In Aetna Ins. Co. v. Jester, 37 Okla. 413, 132 P. 130, this court held:

"Where a fire insurance policy provides that in the event of loss, if the insured and the company fail to agree as to the amount of loss, it shall 'be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and, failing to agree, shall submit their differences to the umpire; and the award in writing of any two shall determine the amount of such loss'—the insured has the right, if he demands it, to introduce evidence before the appraisers as to the extent of his loss, and, where he is refused permission, upon demand, to introduce evidence, the award is not binding upon him."

It is next contended by the defendants that the plaintiff was not the sole owner of the stock of merchandise insured and injured by the fire, and that under the terms of the policies sued on, if the plaintiff was not the sole and unconditional own-

er of the insured property at the time of insuring and loss, the policies were null and void at the time of the fire.

The only testimony disclosed by the record relative to the ownership of the property was that of the plaintiff and Mrs. Thomas. The testimony showed that Mr. Anderson was put in as manager of the store and Mrs. Thomas as a saleslady, and that they were paid a salary. There is testimony to the effect that both Anderson and Mrs. Thomas were to have 25 per cent. of the profits, if there was a profit. The plaintiff testified positively that he owned the entire stock of merchandise, and that regardless of how much it made, neither Anderson nor Mrs. Thomas was to have any interest in the stock, nor had they ever put any money into same. There was no evidence to the contrary. Certainly the testimony was not sufficient to show that the concern was a partnership under any of the various authorities cited by the defendant. If the plaintiff's business succeeded and made a profit, in addition to the salary paid Anderson and Mrs. Thomas, they were to have a part of the profits, but if the business lost money each year, there was no agreement between the parties whereby Anderson and Mrs. Thomas were to share that loss. There was no testimony that would justify the trial court in submitting to the jury an instruction on the issue of separate ownership. The fact that such an issue was raised by the pleadings is immaterial. The agreement between the plaintiff and Anderson and Mrs. Thomas was purely one of employment and not one pertaining to partnership. Brown v. Franklin Fire Ins. Co. (Cal.) 173 P. 403; Kurihara et al. v. Detroit Fire & Marine Ins. Co. (Cal.) 249 P. 215; London Assurance Corp. v. Drennen et al., 116 U. S. 461, 6 Sup. Ct. 442.

In J. P. Martin Co. v. O'Connor et al., 120 Okla. 92, 250 P. 529, this court held:

"It is well established that, where a partnership is disputed, its existence in a given case is a question of fact to be determined by the court or jury; and where such an issue is submitted to the court, and the evidence reasonably sustains the court's findings, such findings will not be disturbed by the appellate court.

"A contract for the remuneration of a person engaged in a business by a share of the profits of the business does not of itself make the servant or agent a partner in the business. In such a case there is no community of interest in the capital stock; the agent or servant does not act as, and is not a principal, trader; he is not clothed

with the usual powers, rights, or duties of a partner, but is subject to the orders of the owner of the business, and he has nothing to do with the losses, except as they affect the amount of his remuneration."

See, also, Anderson v. Whitener, 127 Okla. 284, 261 P. 156. In Hartford Fire Ins. Co. v. Union Graded School Dist. No. 73, 121 Okla. 246, 249 P. 345, this court held:

"Provisions in a fire insurance policy are always construed so as to prevent a forfeiture, if such provisions will reasonably admit of such a construction."

The defendants' next assignment of error is based upon alleged errors in the statement of the case and the issues therein made by the court to the jury and in instructions 3, 4, 5 and 6 given to the jury.

In giving the general instruction which purported to state what was alleged in the petition and answer, the court instructed the jury that the defendants had tendered into court and offered to pay to the plaintiff certain sums under each of the policies of insurance herein. The matters referred to by the court were made by the defendants in their answers to the original petition filed herein, but were eliminated in part from the answers to the amended petitions. The difference in the statements in the two sets of answers seems to be nominal. The difference seems to be that in the answers to the amended petition, the defendants stated they were ready, able, and willing to pay—

"* * * and each and all of said companies, as to this defendant is informed and believes and therefore charges the facts to be, is ready, able and willing to pay its proportionate amount of the award made by said appraisers as aforesaid if plaintiff is found to be the sole and unconditional owner of said property, which this defendant denies."

Since there was no evidence tending to show that the plaintiff was not the sole owner and the court gave no instruction relating to same, we are unable to see how that statement could have confused or prejudiced the jury, and especially so since it was, in purpose, expressing the same thing. The one said "tenders into court," the other said that they were "ready, able and willing to pay." The only error made, if any, was in making any statement at all to the jury about the ownership of the concern, which had not, for the want of evidence, been made an issue for the consideration of the jury.

The particular objection made against instruction No. 3 seems to be that the court,

after charging the jury that all parties agreed to and submitted to an arbitration and that an award was made, then instructed, in effect, that plaintiff was bound by such finding and was entitled to a judgment for the amount only found due him by said appraisers, unless they found by a fair preponderance of the testimony that the plaintiff requested and desired an opportunity to present his evidence to said arbitrators and was not given a reasonable opportunity to do so, or if they found that I. R. Slesnick, the arbitrator selected by defendants, was not fair and impartial and disinterested and was biased in favor of defendants, and plaintiff did not know that fact prior to the arbitration, and that he made false statements to the other two appraisers upon material points which were believed and relied upon by said other two appraisers and caused them to return a finding which they would not have agreed to but for the false statements of the said Slesnick, that if the jury found any of these things to be true, then it would be their duty to find that said arbitration finding was not valid and binding upon plaintiff, etc.

The instruction is not objected to as a proposition of law, but it is contended that it is not applicable to the evidence. With this we cannot agree. There was testimony to the effect that the plaintiff had requested, was promised and was refused an opportunity to be present and present his evidence to the arbitrators. Also that Slesnick made false statements and representations to the other arbitrators as to inventories and as to the amount that the plaintiff had been offered in settlement. We are of the opinion that the court committed no error in giving instruction No. 3.

The objection to instruction No. 4 was that it instructed the jury that if it found the appraisal and award was binding upon the plaintiff, it should find for the plaintiff and against the defendant for specific amounts found to be due by the arbitrators. The defendant contends that the instruction deprived the jury of its exclusive right to determine for itself the disputed question of the admission of liability and of their right to pass upon the credibility of the witnesses. Since the defendants are here contending that the plaintiff is bound by the award, we think this contention is without merit.

The objection to instruction No. 5 is that it instructed the jury that in the event the jury found the appraisal and award was not binding upon the plaintiff, to find the fair cash value of the merchandise insured before the fire and the value of the salvage after the fire, "and the difference between the two will be the loss to plaintiff and the amount due him under said insurance policies." It is contended that the question of ownership of the insured, the admission of liability and waiver of proof of loss and the right of the plaintiff to maintain the suit were all issues before the court and that the court was usurping the functions of the jury.

We have already determined that for the want of any testimony on the part of the defendants or otherwise, the question of ownership was not a controverted issue to be submitted to the jury. As to the admission of liability it was alleged in plaintiff's petition and testified to by the plaintiff that Mr. Thompson, the adjuster for the insurance companies, told the plaintiff that as soon as an inventory could be taken of the salvage they would make a settlement for whatever was due the plaintiff. Thompson was of the Underwriters Salvage Company of New York. The adjusters arranged for the arbitration and appraisement and no questions was ever raised about their having authority to represent the insurance companies in securing the award which the defendants here contend should not be disturbed. The testimony shows that the plaintiff gave due notice of the fire and that the adjusters came in pursuance of such notice, and no further proof of loss was ever required by the defendant companies or their adjusters. Certainly the defendants cannot now raise the question of no waiver of the proof of loss provided in the insurance policies.

In Hartford Fire Ins. Co. et al. v. Sullivan et al., 74 Okla. 241, 179 P. 24, this court held:

"Where a loss occurs of property covered by an insurance policy in the standard form adopted by this state, and the insurance company enters into an agreement with the insured, by which the amount of the loss is duly determined by arbitrators duly selected pursuant to the terms of the policy, without any demand being made by the insurance company for proof of loss required by the policy, the insurance company will be deemed to have waived the furnishing of such proof of loss"

—and said:

"That, under the standard form of policies as adopted in this state, the matters pleaded in the petition and supported by the proof constitute a waiver of proof of loss is so well established, not only by sound and cor-

rect reasoning, but by the decisions of the courts, that insurance companies ought no longer make contention to the contrary. * * * Insurance companies should not be permitted, after a loss occurs, to treat with the insured concerning the amount of loss, thus leading him to believe that the only question to be settled is the amount of loss, and that the preliminary proof ordinarily required is not necessary. As a rule, property owners availing themselves of insurance are inexperienced laymen, and not familiar with the ins and outs, twists and turns, connected with the supposed intricacies of insurance. The insured and the insurer should deal with each other on the plane of common honesty and fairness. One of the prime objects of furnishing the proof of loss is for the purpose of obtaining a description of the property lost and its value. * * * In an attempt to adjust the loss, if the insurance company desires the formal proofs of loss, the insured should be so informed, and the company ought not to be permitted to lead the insured into failing to comply with such requirement until it becomes too late to do so."

In Concordia Ins. Co. of Milwaukee v. School Dist. No. 98 of Payne County, 282 U. S. 545, 75 L. Ed. 528, 51 S. C. 275, that court held:

"Stipulation that waiver must be attached to policy does not apply to insurer's waiver, after loss, of matters required by policy as prerequisites to adjustment and payment.

"Policy provision requiring proofs of loss within 60 days held waived, notwithstanding policy provision that waiver must be attached to policy, where adjusters offered payment after loss and only question raised was of market and replacement value of building."

The plaintiff assigns error in giving instruction No. 6. This instruction relates to the manner of apportionment of the damages among the various insurance companies, should the verdict be in favor of the plaintiff. It is contended that by this instruction, the court told the jury that if the jury found the award of the appraisers was not binding upon the plaintiff, then the jury should return its verdict against the defendants without regard to whether the plaintiff had complied with all the terms and conditions in the contracts sued upon. We find nothing in the instruction to sustain that contention. In instruction No. 5 the jury were instructed relative to the finding of the arbitrators, should they find it binding upon the plaintiff. In instruction No. 6 the jury were instructed as to how to apportion the damages, "should your verdict be in favor of the plaintiff upon the issues presented in the preceding paragraph." The preceding paragraph referred to was instruction No. 5, and when these two instructions are construed together we think they properly instruct the jury on the issues presented. In the defendants' reply brief and reply to the supplemental brief of defendant in error (plaintiff), the defendant contends that instructions Nos. 4, 5, and 6 are erroneous and prejudicial in ignoring the contract rights of the defendants under the co-insurance clause of the policies and that such error was not corrected in any other instruction. The record in this case is voluminous. We have made diligent search but have not been able to find anywhere in the pleadings, in the trial of the cause, in the motion for rehearing, in the petition in error or in the presentation of the case in the defendants' brief styled "Brief of Plaintiffs in Error," where any contention was made that the co-insurance clause in the policies should be taken into consideration in prorating damages in the event the jury should find that the arbitration finding was not binding on the plaintiff and the jury should further find damages in favor of the plaintiff. The record does not show that the objections and exceptions to the instructions or any of them were based on that ground. The record does not show that any instruction referring to the co-insurance clause was asked for by the defendants. Considerable discussion was had before the jury rendered their verdict and in their presence as to the plan of apportionment, but no mention was made or instruction given as to the co-insurance clause in the policies, and we must now conclude that the question of co-insurance was not an issue in the case and was not before the jury and cannot be raised here now for the first time, but the court will consider that same was waived.

In United States Fidelity & Guaranty Co. v. State ex rel. Shull, Bank Com'r, 157 Okla. 27, 10 P. (2d) 454, this court held:

" 'The general rule of pleading is that defenses which assume or admit the original cause of action alleged, but are based upon subsequent facts or transactions which go to qualify or defeat it, must be pleaded.' Continental Gin Co. v. Arnold, 52 Okla. 569, 153 P. 160"

—and said:

"In the case at bar, defendant seeks to defeat plaintiff's cause of action because of certain clauses and conditions in the bond sued upon. Under the holding of the court just announced, supra, if defendant desired to take advantage of said defense, it was

its duty to plead the same, and if it did not plead said defense, it is held to have waived the same."

The court is of the opinion that under the testimony presented, the jury was justified in finding that the arbitration finding was not binding upon the plaintiff. We cannot say that the amount of damages found by the jury is excessive or that the verdict was not sustained by the testimony The testimony showed that the merchandise on hand immediately before the fire was of the value of $23,083.44, and the total damages were found to be $14,300. Under the instructions of the court, the jury apportioned the damages among the various insurers in accordance with the amount of insurance in their respective policies, and giving full consideration to the $4,000 policy of the Aetna Insurance Company, which was transferred to the federal court for trial.

After a full and fair consideration of the entire case, we are of the opinion that the judgment of the trial court is fully supported by the testimony and is free from error, and the same is affirmed.

McNEILL, C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.