Harold MASSEY and Dorothy Massey, husband and wife, Appellees/Cross–Appellants,

v.

FARMERS INSURANCE GROUP, dba Truck Insurance Exchange/Truck Underwriters Association, Appellant/Cross–Appellee.

No. 75279.

Supreme Court of Oklahoma.

June 2, 1992.

As Corrected June 22, 1992.

Rehearing Denied Sept. 23, 1992.

Galen L. Brittingham, Walter D. Haskins, Michael P. Atkinson, Thomas, Glass, Atkinson, Haskins, Nellis & Boudreaux, Tulsa, for appellees, cross-appellants.

Roger R. Williams, Joseph F. Clark, Jr., Williams, Clark, Baker, Howard, & Earl, P.A., Tulsa, John F. Percival, Culp, Heath, Sushnik, Percival & Percival, Oklahoma City, for appellant, cross-appellee.

SIMMS, Justice.

Certified Question of Law from the United States Court of Appeals for the Tenth Circuit.

Appellees, Harold and Dorothy Massey, purchased a fire insurance policy on their home from appellant, Farmers Insurance Group d/b/a Truck Insurance Exchange/Truck Underwriters Association (Farmers). The policy conformed to the statutory requirements of a standard fire insurance policy as mandated by 36 O.S. 1981, § 4803, and contained a clause permitting the amount of loss to be determined by an appraisal of the property by appointed experts. This clause reads as follows:

"Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item, and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally." 36 O.S.1981, § 4803(G).

After a fire damaged their home, the Masseys made claim upon Farmers under the policy. The parties could not reach an agreement upon the amount of the loss, and the Masseys filed an action against Farmers in Atoka County District Court. Farmers then invoked the appraisal provision, and both parties appointed appraisers who figured the estimate for repair.

Farmers moved the court to appoint an umpire pursuant to the appraisal clause, and the court appointed a local builder suggested by Farmers' appraiser and attorneys. The umpire surveyed the property and reviewed the recommendations of the appraisers determining the damage to be repairable for $49,146.00.

A supplemental record and a filed affidavit indicate that the umpire attempted to contact each of the appraisers to obtain further detailed information, and though he received such information from Farmers'

appraiser, he could not reach the Massey's appraiser. A letter from the appraiser appointed by Farmers shows that they agreed with the umpire's determination. It is unclear whether the award was filed with Farmers per the requirement of the provision, however, it was apparently sent to the district court. The Masseys did not file a formal objection to the award. Rather, they discharged their attorney and filed a *pro se* Motion to Reconsider the appointment of the umpire. They then retained new counsel, dismissed the Atoka County action without prejudice, and filed a new action on the policy as well as a bad faith claim in the United States District Court for the Eastern District of Oklahoma. The federal suit went to trial over the objection of Farmers, and the jury returned a verdict for the Masseys exceeding $4,000,000.00 in actual, consequential and punitive damages.

On appeal to the United States Court of Appeals for the Tenth Circuit, Farmers asserted the umpire's damage appraisal was preclusive as to damages. In reviewing this assertion, the Tenth Circuit Court determined that it contained an issue not addressed by the courts of Oklahoma and certified the following question of law pursuant to the Uniform Certification of Questions of Law Act, 20 O.S. 1981, § 1601, et seq.:

"Under Oklahoma law, what is the preclusive effect of a court-appointed umpire's damage appraisal under a statutorily-mandated provision of a fire insurance policy, where the insured, as of right, dismisses without prejudice an initial lawsuit without challenging the umpire's appraisal and, thereafter, institutes a subsequent lawsuit on the same cause of action in another court?"

■ We hold that the umpire's damage appraisal award made pursuant to the policy provision mandated by 36 O.S.1981, § 4803 has no preclusive effect upon issues raised and litigated by the party who did not make demand to enter into the appraisal process.

The legislature enacted § 4803 in 1957, and this Court has had little opportunity to interpret the appraisal portion of it. However, such appraisal clauses have been a part of standard fire insurance policies for well over one hundred years. *See Appalachian Ins. Co. v. Rivcom Corp.*, 130 Cal. App.3d 818, 182 Cal.Rptr. 11 (1982) (citing *Old Saucelito Land & Dry–Dock Co. v. Commercial Union Assurance Co.*, 66 Cal. 253, 5 P. 232 (1884)). Furthermore, this Court has approved of such appraisal provisions in fire insurance contracts since 1912. *See Home Ins. Co. of New York v. Ballard*, 32 Okla. 723, 124 P. 316 (1912); *Rochester German Ins. Co. of Rochester, N.Y. v. Rodenhouse*, 36 Okla. 378, 128 P. 508 (1912).

■ We construed the appraisal provision of § 4803 in *Fidelity–Phenix Fire Ins. Co. of New York v. Penick*, 401 P.2d 514 (Okla.1965), and though we did not determine the preclusive effect of appraisal awards, we did discuss the effect of an insurer calling for appraisal without admitting liability. We held that the appraisal clause of § 4803 does not constitute a condition precedent for maintaining an action on a policy where the insurer, in making demand for an appraisal, reserves the right to litigate the question of liability. Moreover, denial of liability by an insurer waives the right of the insurer to invoke the appraisal provision. *Concordia Fire Ins. Co. of Milwaukee v. Barkett*, 110 Okla. 177, 236 P. 890 (1925).

This holding finds support in the majority view concerning appraisal provisions, including the generally recognized rule that appraisal provisions permit appraisers or umpires to determine one issue, to wit, the amount of damage to the property. 14 G. Couch, *Insurance* § 50:54, at 204 (2d ed. 1982); *Hamilton v. Liverpool, London & Globe Ins. Co.*, 136 U.S. 242, 10 S.Ct. 945, 34 L.Ed. 419 (1890); *Casualty Indem. Exch. v. Yother*, 439 So.2d 77 (Ala.1983); *Hanson v. Commercial Union Ins. Co.*, 150 Ariz. 283, 723 P.2d 101 (Ct.App.1986); *Safeco Ins. Co. of Am. v. Sharma*, 160 Cal.App.3d 1060, 207 Cal.Rptr. 104 (1984); *St. Paul Fire & Marine Ins. Co. v. Wright*, 97 Nev. 308, 629 P.2d 1202 (1981); *Elberon Bathing Co. v. Ambassador Ins. Co.*, 77

N.J. 1, 389 A.2d 439 (1978); *In re Delmar Box Co.*, 309 N.Y. 60, 127 N.E.2d 808 (1955).

The majority view also concludes that although appraisal awards generally cannot determine the *cause* of a loss and *do not discharge* a cause of action on the policy, they are *conclusive* as to the amount of damages, and a *confirmed award* has the same preclusive effect as a judgment in a civil action. 14 G. Couch, *Insurance* § 50:55, at 205 (2d ed. 1982); 44 Am.Jur.2d, *Insurance* § 74 (1982); 45 C.J.S., *Insurance* § 1126 (1946); *Hanson, supra; Safeco Ins. Co. of America, supra; Brethren Mut. Ins. Co. v. Filsinger*, 54 Md.App. 357, 458 A.2d 880 (1983); *Patriotic Order Sons of Am. Hall Ass'n v. Hartford Fire Ins. Co.*, 305 Pa. 107, 157 A. 259 (1931); *Bainter v. United Pac. Ins. Co.*, 50 Wash.App. 242, 748 P.2d 260 (1988). The award in the case at bar *was not confirmed* by the state district court.

In joining the majority of jurisdictions, this Court recognized that awards made under the appraisal clauses of insurance contracts are conclusive as to the amount of loss. *Aetna Ins. Co. v. Jester*, 37 Okla. 413, 132 P. 130 (1913). After an award was made, plaintiff objected to it on several grounds and brought an action on the policy. The jury found that the appraisal was invalidated by the misconduct of the appraisers. On review, we held as follows:

> "Where an appraisal has been fairly conducted in accordance with the law and the terms of the policy, the finding of the appraisers is binding upon the parties, and the insured cannot disregard the appraisal and offer independent evidence of the amount of his loss. His rights, so far as the extent of the loss is concerned, are limited by the award of the appraisers. It would seem, therefore, that [insured] should have an opportunity to make the same proof before the appraisers that he would have if the matter were being litigated in a court of justice, *because the action of the appraisers will keep him from litigating the question again.*"

(Emphasis added) 132 P. at 132. *Accord Mercantile Ins. Co. v. Murray*, 171 Okl.

597, 43 P.2d 451 (1935); *Camden Fire Ins. Ass'n v. Walker*, 111 Okl. 35, 238 P. 462 (1925); *Aetna Ins. Co. v. Murray*, 66 F.2d 289, 290 (10th Cir.1933).

However, these cases were concerned with whether the appraisal clause was binding on the parties to the contract and were written long before the appraisal provision became mandatory in § 4803. In other words, those contracts were entered into by both parties without any mandate from the Legislature to include an appraisal clause, and this Court approved of the clause as a part of that contract. The significant difference between those appraisal provisions and the one before us now is that the latter is imposed upon both the insurer and the insured by statute, and neither party can negotiate its inclusion or exclusion. Moreover, when one party demands that the appraisal process begin, the other party is compelled to submit to it whether they want to or not.

This distinction was significant to the Oregon Supreme Court when they considered a question almost identical to the one before this Court. In *Molodyh v. Truck Ins. Exch.*, 304 Or. 290, 744 P.2d 992 (1987), the court held, as this Court did in *Penick, supra,* that a statutorily-mandated appraisal provision is not a condition precedent to litigation. Thus, the statute does not require compliance with the provision in order to litigate a claim. The court further held that once the appraisal process is demanded by one of the parties, the procedure of the statute and policy becomes mandatory. Hence, to the demanding party, the appraisal process is permissive because they have chosen to invoke it. However, once that party invokes it, the process becomes mandatory to the other party.

As a result, the provision compels one party to submit to appraisal upon the other party's demand. The court in *Molodyh* concluded that the appraisal award that results is binding upon the party which demanded the appraisal because the provision is permissive to him and he chose the appraisal tribunal as his forum. However, where a statute requires mandatory compli-

ance with the appraisal provision, the appraisal award is not binding upon the party who did not demand the appraisal because such binding nature of the appraisal award would violate the non-demanding party's constitutional right to trial by jury. The court stated:

"One party may not unilaterally decide to have someone other than a jury determine the issues and thereby destroy the other's right to a jury trial." 744 P.2d at 998.

■ The reasoning of the Oregon court is sound, and we embrace it in our analysis of the case at bar. At the time this action was filed, the Oklahoma Constitution, Art. 2, § 19, provided:

"The right of trial by jury shall be and remain inviolate, except in civil cases wherein the amount in controversy does not exceed One Hundred Dollars ($100.00)."

Other than this monetary limit, no act of government may deny the right of trial by jury to a person. While as in the case of arbitration, a person may waive his right to jury trial, the legislature cannot waive it for him.[1]

Since the appraisal provision statutorily-mandated in § 4803 compels the Masseys to submit to the appraisal process upon Farmers demand, Farmers has unilaterally decided which forum the issue of the amount of loss would be decided, namely the appraisal tribunal. Hence, a construction of the statutory appraisal provision in the same manner as similar provision in *contracts* would run afoul of the Art. 2, § 19 right of jury trial.

■ The Masseys urge this Court to strike down the appraisal provision as unconstitutional. However, we are constrained to construe statutes whenever possible so as to uphold their constitutionality. *St. Paul Fire & Marine Ins. Co. v. Getty Oil Co.,* 782 P.2d 915, 918 (Okla.1989).

Therefore, we hold, as the court in *Molodyh* did, that § 4803(G) makes appraisal awards binding upon the party invoking the appraisal process, yet makes those same awards non-binding upon the party compelled to participate due to the other party's demand.[2]

Farmers argues that the appraisal process does not violate the right to trial by jury because the award is subject to judicial review for fraud, bad faith and manifest mistake per this Court's holdings in *Aetna Ins. Co. v. Jester, supra, Camden Fire Ins. Ass'n v. Walker, supra,* and *Mercantile Ins. Co. v. Murray, supra.* However, under these cases, the jury does not determine the amount of loss unless they first find that the appraisal award was subject to fraud, bad faith or mistake. Thus, if the party cannot prove that the award lacks credibility, that party is denied the opportunity to have the jury determine the amount of loss. Under such a scheme, the right of jury trial is still thwarted.

■ Moreover, Farmers asserts the right to trial by jury is only denied as to the single issue of the amount of loss, citing *Appalachian Ins. Co. v. Rivcom Corp.,* 130 Cal.App.3d 818, 182 Cal.Rptr. 11 (1982). Therein, the court rejected the constitutional challenge to a statute requiring an appraisal clause in all insurance policies written in California. The insured argued the statute denied it the right to jury trial. However, the appellate court determined that the insured retained its right to pursue a separate civil action on all issues except the amount of loss, holding:

"Thus, Rivcom is not without jury trial rights. It simply has no jury trial right as regards the setting of the dollar amount of the loss under the policy, where the Legislature has established a standard form of policy providing for a particular procedure to be followed in

---

**1.** Arbitration differs from the subject appraisal process in that arbitration is not forced upon the parties by statute. This Court noted in *Voss v. City of Oklahoma City,* 618 P.2d 925, 927 (Okla.1980), that arbitration is "the referral of a dispute by the *voluntary agreement* of the parties to one or more impartial arbitrators for a

final and binding decision as a determination of their dispute." (Emphasis added) The appraisal provision in the case at bar was not agreed to voluntarily, but rather, was required by statute.

**2.** Unless there is fraud, bad faith or mistake.

one narrow aspect of the claim process. To hold otherwise would be to do violence to a longstanding and well settled body of law, where there is no reason to do so." 182 Cal.Rptr. at 14.

We cannot agree with this rationale because such would ignore the clear mandate of our own constitutional provision. Indeed, the court in *Molodyh* considered the above-quoted language in its decision and held:

"Our constitution provides that the right to jury trial 'shall remain inviolate.' This right includes having a jury determine all issues of fact, not just those issues that remain after the legislature has narrowed the claims process. In many instances, the amount of the loss will be the only disputed issue." 744 P.2d at 997.

Because Art. 2, § 19 of the Oklahoma Constitution provides for the right of jury trial to be and remain inviolate, we likewise conclude that legislative narrowing of the claims process is not effective to deny a party their right to have all fact issues decided by a jury.

Farmers further urges this Court to follow the holding in *Erickson v. Farmers Union Mut. Ins. Co.*, 311 N.W.2d 579 (N.D. 1981), a case in which a trial court granted the insured's motion for summary judgment against the insurer, finding that the award, or amount of loss, arrived at by the appraisal tribunal was binding on the insurer. This case is distinguishable because it only involved a policy provision, there being no indication that the appraisal clause was imposed upon the parties by legislative enactment. Therefore, by entering into the insurance contract, the parties *agreed* to be bound by the appraisal award once invoked. As noted above, the Masseys had no choice as to the inclusion of the appraisal clause.

For the same reason, the cases of *Chandos v. American Fire Ins. Co. of Philadelphia*, 84 Wis. 184, 54 N.W. 390 (1893), and *Young v. Pennsylvania Fire Ins. Co.*, 269 Mo. 1, 187 S.W. 856 (1916), among others cited by Farmers, are distinguishable.

Farmers' final argument is that the appraisal process does not violate the constitutional right to trial by jury because at the time that the Oklahoma Constitution was adopted, cases were already written holding that an appraisal award was binding on both parties who entered into the process to determine amount of loss pursuant to a contractual provision in an insurance policy. Farmers cites *Maryland National Ins. Co. v. District Court of Oklahoma County*, 455 P.2d 690 (Okla.1969), which holds that Art. 2, § 19 only applies to those causes of action which were recognized under the common law as entitling the parties thereto to a jury trial at the time of adoption of the Oklahoma Constitution. This case and its well-settled law stand. However, it does not apply here because at the time of the adoption of the constitution, parties had a right to have a jury decide questions of fact pertaining to actions on fire insurance policies. The fact that case law recognized that a party could waive that right by entering into a contract which allowed the other party to invoke the appraisal process for the sole issue of amount of loss has no bearing upon this case for the reasons set out above. Thus, this contention has no merit.

We, therefore, conclude that a court-appointed umpire's damage appraisal under the statutorily-mandated provision of a fire insurance policy, 36 O.S.1981, § 4803(G), has no preclusive effect upon the party who did not demand the appraisal process.

QUESTION ANSWERED.

HODGES, V.C.J., and LAVENDER, SIMMS, HARGRAVE, and SUMMERS, JJ., concur.

OPALA, C.J., and ALMA WILSON, J., concur in result.

KAUGER, J., not participating.

OPALA, Chief Justice, concurring in result.

The court pronounces today that a fire insurance policy's statutorily mandated damage-assessment procedure, referred to

in the policy as an "appraisal"[1]—by which a court-appointed umpire determines the amount of actual cash value of a fire loss—binds the party invoking the appraisal procedure (the Insurer in this case) but does not bind the nondemanding party (the Insured in this case). Today's opinion reasons that the fire loss assessment procedure violates the Insured's fundamental-law right to a jury trial guaranteed by Art. 2, § 19, Okl. Const.[2]

While I join in the result reached by the court, I must recede from its pronouncement. Today's opinion resolves fundamental-law issues that are unnecessary for the answer sought and formulates a constitutional-law norm broader than that which is required.[3] I would hold that the Insured's presubmission dismissal of the state-court case, which occurred before the parties had a full and fair opportunity to litigate the issue for which the Insurer seeks preclusive effect—the amount of insured loss—*cannot constitute a judicial settlement of fire loss indemnity. My short answer to the certified question would therefore be that the Insured's presubmission-stage dismissal sans judgment does not qualify for preclusive effect.*[4]

Since the court has seen fit not only to address today the fundamental-law orthodoxy of the loss-appraisal clause, but also to delve into the validity of § 4803(G)'s[5] statutory mandate, I write separately to explain that Art. 2, § 19, Okl. Const.,[6] standing alone, affords *no* basis for condemning the Insured's *executory contractual waiver of his constitutional right to a jury trial.* Rather, *promise-based waivers* of constitutional rights are explicitly proscribed by Art. 23, § 8, Okl. Const.[7] If

---

1. The terms of 36 O.S.1981 § 4803(B) provide in part:

   "B. *No policy* or contract of fire insurance *shall be made,* issued or delivered by any insurer or by any agent or representative thereof, on any property in the state, *unless it shall conform as to all provisions,* stipulations, agreements and conditions, *with such form of policy.* * * * " (Emphasis added.)

   The terms of 36 O.S.1981 § 4803(G) provide in part:

   "The *form of the standard fire insurance policy* (with permission to substitute for the word 'company' a more accurate descriptive term for the type of insurer) *shall be* as follows:

   * * * * * *

   Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, *on the written demand of either, each shall select a competent and disinterested appraiser* and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The *appraisers shall then appraise the loss,* stating separately actual cash value and loss to each item, and, failing to agree, *shall submit their differences, only, to the umpire. An award in writing,* so itemized, of any two when filed with this Company *shall determine the amount of actual cash value and loss.* Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally. * * * " (Emphasis added.)

2. The terms of Art. 2, § 19, Okl.Const., provide in pertinent part:

   "The right of trial by jury shall be and remain inviolate...."

3. *See State ex rel. Okl. Bar Ass'n. v. Lobaugh,* Okl., 781 P.2d 806, 813 (Okl.1988) (Opala, J., dissenting).

4. Issue preclusion and collateral estoppel are two different names for the same legal doctrine. Restatement of Judgments (Second) § 27, Comment (b); *Underside v. Lathrop,* Okl., 645 P.2d 514, 517 n. 8 (1982); *Veiser v. Armstrong,* Okl., 688 P.2d 796, 799 n. 7 (1984). *See infra* Part II for a detailed discussion of issue preclusion. The principle does not apply when the party against whom the prior decision is interposed did not have a "full and fair" opportunity to litigate the issue to be precluded as a result of the earlier case. *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 414–415, 66 L.Ed.2d 308 (1980); *Underside, supra* at 516–517; *Veiser, supra* at 800.

5. For the terms of 36 O.S.1981 § 4803(G) *see supra* note 1.

6. For the pertinent terms of Art. 2, § 19, Okl. Const., *see supra* note 2.

7. The terms of Art. 23, § 8, Okl.Const., provide:

---

Section 4803, which was first enacted in 1957, was amended November 1, 1985 and November 1, 1989. The 1985 and 1989 amendments do not affect my analysis. References throughout this opinion are to the law in effect when the cause of action arose.

I were testing today the constitutional conformity of § 4803(G)'s *mandated* loss-settling mechanism, I would conclude that the statute offends Art. 5, § 46, Okl. Const.[8] In my view § 4803(G) impermissibly singles out those who seek recovery for insured fire loss for a mode of trial different from that accorded other contract-action litigants.[9] A similar infirmity could be ascribed to that statute under the standards of the Equal Protection Clause.[10]

## I

## ANATOMY OF LITIGATION

The Insured[11] purchased from the Insurer a fire insurance policy which contained statutorily mandated appraisal procedures invocable when fire damages the insured property. Under the prescribed procedure, if the parties cannot agree on the amount of indemnity, they are expected, on the written demand of either, to appoint partisan appraisers to determine initially the amount of fire loss. The appraisers must then select an umpire. The court makes the selection if the parties cannot agree on any one. If, after the two partisan appraisals, an agreement cannot be reached on the amount of indemnity, *the appraisals are to be submitted to the umpire who makes the loss award.*

A fire damaged the Insured's property. The Insurer invoked the policy's loss-appraisal process and the parties appointed two independent appraisers. When the loss claim could not be settled, the Insured sought relief in a state-court action. Later, an umpire was appointed by the court. Because the parties could not reconcile the partisan appraisals, the umpire made an award which was awaiting court approval.[12] Before the judge could reach for consideration *the merits of the umpire's loss award,* the Insured dismissed the state-court action without prejudice. Left pending and undetermined at the termination of the state-court action was (1) *the Insured's motion to reconsider the appointment of umpire* and (2) the Insurer's offer to allow judgment on the umpire's award. The Insured then refiled his claim in a federal court. He sought not only a determination of the loss amount but also punitive damages for the Insurer's bad-faith failure to settle the fire loss claim. A jury trial resulted in judgment against the Insurer for $4,390,000 in actual, consequential and punitive damages. The federal court also awarded the Insured attorney's fees of $376,275, prejudgment interest exceeding $390,000 and costs of $44,766.

On appeal to the United States Court of Appeals for the Tenth Circuit, the Insurer urges *only* that the state court's judicially unconfirmed umpire's award should be accorded preclusive effect. Pursuant to the Uniform Certification of Questions of Law

---

"*Any provision of a contract, express or implied, made by any person, by which any of the benefits of this Constitution is sought to be waived, shall be null and void.*" (Emphasis mine.)
See *infra* Part III for a detailed explanation of why Art. 23, § 8, rather than Art. 2, § 19, should be invoked to invalidate the contract's appraisal clause.

8. The pertinent terms of Art. 5, § 46, Okl.Const., provide:
"The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law authorizing:
　＊　　＊　　＊　　＊　　＊　　＊
Regulating the *practice* ... in judicial proceedings or inquiry before the courts ... or other tribunals...." (Emphasis mine.)

9. Art. 5, § 46, Okl.Const., *see supra* note 8. *This constitutional provision condemns as offending "special" legislation all enactments that prescribe*

disparate procedure for a single and indivisible litigation class. See ·also *Reynolds v. Porter,* Okl., 760 P.2d 816, 823 (1988); *Maule v. Independent School Dist. No. 9,* Okl., 714 P.2d 198, 203–204 (1986).

10. U.S. Const., Amend. 14, § 1 provides in part:
" ＊ ＊ ＊ nor shall any State ... deny to any person within its jurisdiction the equal protection of the laws. ＊ ＊ ＊"
See *infra* Part V for a detailed discussion of the United States Supreme Court's equal protection jurisprudence.

11. To those whose property was insured by the policy I refer collectively as "the Insured" and use the masculine pronoun "he".

12. The Insured's appraiser set the loss at $113,000; the Insurer's appraiser at $49,000. *The umpire's judicially unconfirmed fire loss award was $49,146.*

Act, 20 O.S. 1981 §§ 1601 et seq., the United States Court of Appeals for the Tenth Circuit certified for our answer the following question:

"Under Oklahoma law, what is the preclusive effect of a court-appointed umpire's damage appraisal under a statutorily-mandated provision of a fire insurance policy, where the insured, as of right, dismisses without prejudice an initial lawsuit without challenging the umpire's appraisal and, thereafter, institutes a subsequent lawsuit on the same cause of action in another court?"

## II

## NO PRECLUSIVE EFFECT MAY BE GIVEN TO THE STATE–COURT JUDICIALLY UNCONFIRMED UMPIRE'S AWARD

The Insurer contends that the fire loss amount was *finally determined* by the umpire's unapproved loss award. Under the doctrine of *collateral estoppel,*[13] once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate the is-

---

13. See *supra* note 4.

14. *Allen v. McCurry, supra* note 4, 449 U.S. at 95, 101 S.Ct. at 414–415; *Veiser v. Armstrong, supra* note 4 at 799–800 n. 7; *see also Underside v. Lathrop, supra* note 4; *Benham v. Plotner,* Okl., 795 P.2d 510, 512 (1990).

15. When an issue of law or fact is finally decided in an action *after a full and fair inquiry* by a court of competent jurisdiction, the same question cannot thereafter be revisited and decided differently in another subsequent and different suit or proceeding. *Veiser v. Armstrong, supra* note 4 at 800.

16. For amounts of the two appraisals and the umpire's fire loss award, *see supra* note 12.

17. The law's only condition on the Insured's right to dismiss the state-court action without prejudice was that the dismissal come before final submission of the case to the jury or to the court. 12 O.S.1991 § 683.

The pertinent terms of 12 O.S.1991 § 683 provide:

An action may be dismissed, without prejudice to a future action: First, By the plaintiff, before the final submission of the case to the

sue.[14] An indispensable prerequisite for a successful issue preclusion plea is that *the party against whom it is invoked must have had full and fair* opportunity to litigate the issue.[15]

Although the loss-appraisal procedure may have been completed in conformity to the insurance policy's *contractual terms,* the umpire's judicially unconfirmed award cannot be viewed—for issue preclusion purposes—as the functional equivalent of *adjudged recovery for the Insured's fire loss.*[16] The federal-court record before us *does not disclose either a state-court judgment or final order* that (a) determines the amount of loss or (b) *approves* the umpire's loss award. *I would hence conclude today that the Insured's recovery amount was never fully and fairly litigated and the umpire's unsanctioned award lacks the attributes critical for* application of issue preclusion. The state-court action, which had ended in a presubmission dismissal[17] *sans judicial settlement of any tendered issue,* simply failed "otherwise than upon the merits."[18] Its ashes will *not* yield what the Insurer hopes to extract here: *preclusion for the*

---

jury, or to the court, where the trial is by the court. * * *"

Under § 683, "final submission" occurs after law and facts are fully and fairly litigated. In a case tried to the court, where the *evidentiary process has been concluded and time given to counsel for future argument or future filing of briefs, the cause is not finally submitted and the plaintiff may dismiss without prejudice.* Firestone Tire & Rubber Co. v. Barnett, Okl., 475 P.2d 167, 170 (1970), quoting *Tiffany v. Tiffany,* 200 Okl. 670, 199 P.2d 606 (syllabus 1) (1948).

18. The Insured's voluntary dismissal without prejudice of his state-court action *before* it had gone to submission is but a "failure of the action otherwise than on the merits" under 12 O.S.1991 § 100. The terms of 12 O.S.1991 § 100, variously called the "savings," "recommencement-of-action" or "renewal" statute, provide:

"If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if *the plaintiff fail in such action otherwise than upon the merits,* the plaintiff, or, if he should die, and the cause of action survive, his representatives may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed." (Emphasis mine.)

*amount of the umpire's fire loss award,* which would *bind* the Insured in the later-brought federal-court suit now on appeal.[19] At *the very time the Insured dismissed his state-court action, pending and undetermined before the judge was his motion to reconsider the umpire's appointment* as well as the Insurer's offer to allow judgment on the umpire's award. *The motion to reconsider stood as an insuperable barrier to submission.*[20] Preclusive effect may not be accorded to the umpire's judicially unconfirmed award.

## III

ART. 2, § 19, OKL.CONST.,[21] UPHOLDS ONE'S RIGHT TO TRIAL BY JURY BUT DOES NOT PROTECT AGAINST EXECUTORY CONTRACTUAL WAIVER OF THAT RIGHT

The umpire's award may be tested here for its preclusive effect without *any inqui*-ry into the fundamental-law validity either *of policy appraisal clauses or of § 4803(G)'s statutory mandate.* In advance of strict necessity shown by the record, I would not today address any of the constitutional issues settled by the court's answer to the question before us.[22]

The court applies Art. 2, § 19, Okl. Const., *standing alone,* as a vehicle to invalidate not only § 4803(G)'s mandate but also the policy's appraisal provision. The insurance industry's long-standing custom of including a loss-appraisal mechanism in fire policies gives this *contract clause* an existence *separate from* and *independent of* the *statutory mandate.*[23] The clause's widespread usage *long before § 4803(G) was ever enacted into law clothes the appraisal provision with the unmistakable earmarks of a custom of the trade.*[24] As a judicially sanctioned insurance industry's

**19.** Insurer's argument presents an intermixture of selective strands drawn from issue preclusion and judicial estoppel concepts. *Neither* of these two theories, which Insurer seems to advance as an integrated legal doctrine, will avail here. *Issue preclusion* is uninvocable without some antecedent *adjudication* and a full and fair opportunity to litigate, *Allen v. McCurry, supra* note 4, *Underside v. Lathrop, supra* note 4. *Judicial estoppel,* which prevents a party who knowingly assumed a given position from taking an inconsistent stand in the course of the same judicial proceeding, *Messler v. Simmons Gun Specialties, Inc.,* Okl., 687 P.2d 121, 128 (1984), is equally unavailable. The latter doctrine's application came to be more fully elucidated in *Panama Processes v. Cities Service Co.,* Okl., 796 P.2d 276, 286 (1990), where we stated that it does not prevent a party from asserting a *legal theory* contrary to one advanced earlier in the litigation. *The mechanism we are to declare in this case as legally proper for settling the amount of Insured's fire loss is a matter of law, not a fact that could bind the Insured by judicial estoppel. Panama, supra* at 286.

**20.** *See Firestone Tire & Rubber Co. v. Barnett, supra* note 17; *Tiffany v. Tiffany, supra* note 17.

**21.** For the pertinent terms of Art. 2, § 19, Okl. Const., *see supra* note 2.

**22.** The prudential rule of strict necessity, adhered to by *all* state and federal courts, holds that *constitutional issues must not be resolved in advance of strict necessity. I.N.S. v. Chadha,* 462 U.S. 919, 937, 103 S.Ct. 2764, 2776, 77 L.Ed.2d 317 (1983); *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347, 56 S.Ct. 466, 483, 80 L.Ed. 688 (1936) (Brandeis, J., concur-ring); *In Re Initiative Petition No. 347 State Question No. 639,* Okl., 813 P.2d 1019, 1037 (1991) (Opala, C.J., concurring); *Smith v. West-inghouse Elec. Corp.,* Okl., 732 P.2d 466, 467 n. 3 (1987); *Schwartz v. Diehl,* Okl., 568 P.2d 280, 283 (1977); *Dablemont v. State, Department of Public Safety,* Okl., 543 P.2d 563, 564–565 (1975); *see also In re Initiative Petition No. 348,* Okl., 820 P.2d 772, 781, 782 n. 4 (1991) (Opala, C.J., concurring in result); *Johnson v. Walters,* Okl., 819 P.2d 694, 708, 712 n. 26 (1991) (Opala, C.J., concurring in part and dissenting in part); *State ex rel. Okl. Bar Ass'n. v. Lobaugh, supra* note 3; *In Re Initiative Petition No. 341,* Okl., 796 P.2d 267, 275 (1990) (Opala, V.C.J., concurring in result).

*The question certified to us does not call for constitutional testing. We are asked to give our answer to but one question: whether the umpire's loss award may be accorded preclusive effect. See the end of Part I for the complete text of the certified question.*

**23.** The long-standing history of appraisal clauses can be traced to the time of our statehood. *See Home Ins. Co. of New York v. Ballard,* 32 Okl. 723, 124 P. 316 (1912); *Rochester German Ins. Co. of Rochester, N.Y. v. Rodenhouse,* 36 Okl. 378, 128 P. 508 (1912).

**24.** For a definition of "usage of trade" *see* 25 O.S.1991 § 19; its pertinent terms are:

"Usage is a reasonable and lawful public custom concerning transactions of the same nature as those which are to be affected thereby, existing at the place where the obligation is to be performed, and either known to the parties, or so well established, general and uni-

long-established practice, the loss-appraisal clause cannot be ignored. It is a legitimate offspring of Oklahoma's common law. The legal norm embodied in § 4803(G) should hence be considered as declaratory of the pre-existing unwritten law.[25] It does not facially contravene Art. 2, § 19, Okl. Const.[26] The latter section *upholds a person's fundamental right to trial by jury but fails to protect it against executory contractual waivers.* Were I convinced today that the constitutional issues settled by the court should be reached, I would *not* rely on § 19 but *solely* on Art. 23, § 8, Okl. Const., the section that explicitly proscribes promise-based waivers of constitutional rights.[27] *The policy's appraisal mechanism, which stands as a substitute "mode of trial" for disputed fire losses, clearly offends § 8.*

*A loss-appraisal procedure may be viewed as an efficient or desirable method of resolving the amount of a contested fire claim if both parties are agreeable.* But because *Art. 23, § 8, absolutely interdicts* judicial enforcement of *executory ex contractu commitments to relinquish constitutional rights that may be available in disputes to arise in futuro, the appraisal clause is infirm.*[28]

## IV

SECTION 4803(G)'S MANDATE FOR UMPIRE–AWARDED FIRE LOSS VIOLATES THE ART. 5, § 46, OKL. CONST.,[29] PROHIBITION AGAINST SPECIAL LAWS

Remedial provisions of statutory law which apply to fewer than an entire class of similarly situated persons are constitutionally infirm. Art. 5, § 46, Okl. Const.[30] *Contract litigants comprise but a single class.* Section 4803(G) singles out fire indemnity insureds for use of a deciding mechanism different from jury trial. The latter trial mode *is afforded by Art. 2, § 19, Okl. Const., to all contract litigants.* Were we to countenance § 4803(G)'s mandate for fire loss appraisal as a properly substituted settlement mechanism, a dichotomous division of trial mode would be created—contrary to Art. 5, § 46—for a single class of contract litigating parties.[31] Fire loss claimants would have *only* the appraisal method for settling the disputed amount of indemnity to be paid, while other contract litigants would continue to enjoy

form, that they must be presumed to have acted with reference thereto."
*See also* 12A O.S.1991 § 1–205(2); its terms are: "(2) A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. If it is established that such a usage is embodied in a written trade code or similar writing the interpretation of the writing is for the court."

**25.** A usage is a practice or method regularly observed. *Hull v. Sun Refining and Marketing Co.,* Okl., 789 P.2d 1272, 1278 (1990); *see also Braden Winch Co. v. Surface Equipment Co.,* 196 Okl. 444, 165 P.2d 640, 643 (1946). A declaratory statute is expressive of pre-existing common law. *In re Ungaro's Will,* 88 N.J.Eq. 25, 102 A. 244, 246 (1917); *Nelson v. Sandkamp,* 227 Minn. 177, 34 N.W.2d 640, 642 (1948).
Unabrogated common law stands side by side with its legislative modification. *Waggoner v. Town and Country Mobile Homes, Inc.,* Okl., 808 P.2d 649, 655 (1991) (Opala, V.C.J., concurring in part and dissenting in part); *State Mut. Life Assur. Co. of Amer. v. Hampton,* Okl., 696 P.2d 1027, 1031–1032 (1985); *Hood v. Hagler,* Okl., 606 P.2d 548, 552–553 (1980).

**26.** Although Art. 2, § 19, Okl.Const., *supra* note 2, may be invoked to trump *government-erected barriers* to the constitutional guaranty of trial by jury, its reach *does not extend to executory contractual waivers.*

**27.** For the terms of Art. 23, § 8, Okl.Const., *see supra* note 7.

**28.** *Raines v. Independent School Dist. No. 6,* Okl., 796 P.2d 303, 304–305 (1990) (Opala, V.C.J., concurring); *Dean Witter Reynolds, Inc. v. Shear,* Okl., 796 P.2d 296, 298 (1990); *Long v. DeGeer,* Okl., 753 P.2d 1327, 1330 (1988) (Opala, J., concurring).

**29.** For the pertinent terms of Art. 5, § 46, Okl. Const., see *supra* note 8.

**30.** For the pertinent terms of Art. 5, § 46, Okl. Const., *see supra* note 8. *See also Reynolds v. Porter, supra* note 9; *Board of County Com'rs. v. Muskogee,* Okl., 820 P.2d 797, 806 (1991); *Maule v. Indep. School Dist. No. 9, supra* note 9.

**31.** *Reynolds v. Porter, supra* note 9.

jury trials. *In short, § 4803(G) plainly violates Art. 5, § 46's prohibition against special remedial enactments.*

## V

### THE UNITED STATES SUPREME COURT'S EQUAL PROTECTION JURISPRUDENCE

The statute-mandated appraisal procedure will not pass muster under the United States Supreme Court's equal protection jurisprudence. Section 4803(G) calls for the use of different deciding mechanisms in litigation that falls within a single class.[32] Although states are free to enlarge the basic freedoms guaranteed by the federal constitution, they may not create artificial boundaries for damage claimants who are similarly situated.[33] To meet equal protection standards, *all* who litigate their claims need not receive identical treatment, but the distinctive features of a classification must have some relevance to the purpose for which it has been created.[34]

The avowed purpose of mandatory loss appraisals is quick and practical resolution of disputed fire loss claims. Because the very same goals are also applicable to other contract and insurance indemnity disputes, I find no rational connection between the distinction and the classification's purpose.[35]

## SUMMARY

*For my answer today I would simply hold that, in the scenario tendered by the certified question and the accompanying record, the court-appointed umpire's judicially unapproved award[36] in the earlier state-court action does not have preclusive effect on any phase of the later federal-court litigation.*

---

**32.** *Baxstrom v. Herold,* 383 U.S. 107, 111, 86 S.Ct. 760, 762–763, 15 L.Ed.2d 620 (1966); *Humphrey v. Cady,* 405 U.S. 504, 508–512, 92 S.Ct. 1048, 1051–1054, 31 L.Ed.2d 394 (1972); *Cascio v. State Dept. of Pub. Safety,* Okl., 686 P.2d 282, 284 (1984).

**33.** *Baxstrom v. Herold, supra* note 32, 383 U.S. at 111, 86 S.Ct. at 763; *Humphrey v. Cady, supra* note 32, 405 U.S. at 512, 92 S.Ct. at 1053; *Cascio v. State Dept. of Pub. Safety, supra* note 32.

**34.** *Baxstrom v. Herold, supra* note 32; *Humphrey v. Cady, supra* note 32; *Wilson v. Foster,* Okl., 595 P.2d 1329, 1332 (1979); *see also Cascio v. State Dept. of Pub. Safety, supra* note 32.

**35.** U.S. Const., Amend. 14, § 1, *supra* note 10. The Oklahoma Constitution does not include an equal protection clause similar to that found in its federal counterpart, but this court has identified a functional equivalent of that clause in the anti-discrimination component of our state constitution's due process section. Art. 2, § 7, Okl. Const. *See Fair Sch. Finance Coun. of Okla. v. State,* Okl., 746 P.2d 1135, 1148 n. 48 (1987).

The terms of Art. 2, § 7, Okl.Const., provide: "No person shall be deprived of life, liberty, or property, without due process of law."

**36.** *See, e.g., Astoria Federal Sav. & Loan Ass'n v. Solimino,* —— U.S. ——, 111 S.Ct. 2166, 2169–2171, 115 L.Ed.2d 96 (1991), where the Court *noticed* that Congress "is understood to legislate against a background of common-law adjudicatory principles," which include the rules of preclusion, but *nonetheless held judicially unreviewed state administrative findings to be without preclusive effect on age-discrimination proceedings in federal court,* because raising the bar of preclusion would be inconsistent with Congress' intent in enacting the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. Were we today to conclude that preclusive effect could be given in this case to a *judicially unapproved umpire's award,* our holding would be *inconsistent with the unequivocal text of and jurisprudence construing* 12 O.S.1991 § 100. That section requires the presubmission dismissal like that of the plaintiffs here to be treated as a disposition "otherwise than on the merits."